UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2010 JAN 12  A 11: 06

SCOTT TRAUDT,
Plaintiff

v.                                                          C.A. No.    1 ' 10 - c v - 12 -

PHILLIP ROBERTS and
RICHARD SMOLENSKI, individually
and in their capacity as officers of the
City of Lebanon Police Department and
the CITY OF LEBANON, NEW
HAMPSHIRE

## COMPLAINT

### INTRODUCTION

This is a civil action in which the Plaintiff, Scott Traudt, alleges that Officers Phillip
Roberts and Richard Smolenski of the Lebanon, New Hampshire Police Department denied him
his rights of free speech and assaulted him, using excessive and unreasonable force following a
pretextural, illegal motor vehicle stop in Lebanon, New Hampshire, on or about January 14,
2007. Plaintiff avers that the actions of the officers violated his rights under the First and Fourth
Amendments of the Constitution of the United States of America as made applicable to the states
under the Fourteenth Amendment and 42 U.S.C. §1983. Plaintiff also asserts state law claims
(including *respondeat superior* against the City of Lebanon) under this court's supplemental
jurisdiction pursuant to 28 U.S.C. §1367.

## PARTIES

1.      Plaintiff Scott Traudt (hereinafter referred to either as "Scott" and/or "Plaintiff") has at all times mentioned herein been a resident and citizen of the Town of Strafford, Vermont.

2.      Upon information and belief, Defendant, Phillip Roberts ("Roberts"), is or was at all times mentioned herein, a member of the Lebanon, New Hampshire, Police Department and is named as a defendant in both his individual and official capacities.

3.      Upon information and belief, Defendant, Richard Smolenski ("Smolenski"), is or was at all times mentioned herein, a member of the Lebanon, New Hampshire, Police Department and is named as a defendant in both his individual and official capacities.

4.      Upon information and belief, Defendant, City of Lebanon (hereinafter sometimes referred to as either "the City" and/or "Lebanon"), is a body corporate, located in Grafton County, New Hampshire.  It maintains a Police Department as part of its governmental and ministerial activities.

## JURISDICTION

5.      The Court has original jurisdiction over this action in accordance with 42 U.S.C. §1983, *et seq.*  It has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

## VENUE

6.      Venue is appropriate in this district pursuant to 28 U.S.C. §1391, in that parties defendant reside in this district and the events giving rise to the claim that are the subject of this action also occurred in this judicial district.

## FACTUAL BACKGROUND AND CONTROVERSY

7.       On or about the evening of January 13-14, 2007, Scott was with his then wife, Victoria Traudt (hereinafter individually referred to as "Victoria" but sometimes collectively mentioned with her husband as "the Traudts") and a friend at a nightclub ("the club") on Benning Street in Lebanon, New Hampshire.

8.       While at the club, Scott consumed some alcoholic beverages (hereafter, "drinks") and as the evening progressed, complained about the language being used by a disc jockey. Shortly thereafter, an employee or agent of the club advised Scott that Scott would not be served additional drinks if Scott wished to stay at the club.

9.       Scott was informed of this decision and calmly allowed a representative of the club to mark the tops of Scott's hands with large letters "X", ostensibly to notify the club's bartenders, waitresses or other servers of alcohol that Scott was not to be served further drinks.

10.       Scott was the only person in his party to be denied further service of alcoholic beverages by or at the club.

11.       Within a relatively short time, Scott, Victoria and their friend left the club so as to return to their homes.

## THE VEHICLE STOP

12.       In the early minutes of January 14, 2007, their friend drove away in his car and the Traudts (Victoria driving) left in their own motor vehicle.

13.       While on Benning Street at the intersection South Main Street, Lebanon, the Traudts noticed an electronic signal, apparently used to control traffic at the intersection through the use of traditional green, yellow and red displays.

14.     As the Traudt vehicle passed through the aforementioned intersection, the electronic signal was displaying the color "yellow" for traffic travelling in the same direction as the Traudts.

15.     Roberts has claimed (in subsequent reports and testimony) that as the Traudt vehicle passed through the intersection, he was sitting in his marked Lebanon police vehicle, allegedly stopped, facing southbound, for a red signal light on South Main Street, Lebanon.

16.     The Traudts made a proper, legal left turn from Benning Street to the northbound lanes of South Main Street, passing the point at which Roberts alleges he was stopped.

17.     Without any apparent timely investigation or testing about whether the electronic signal device was working properly at the time the Traudts approached and passed through the intersection, Roberts claimed (in subsequent reports) that although the traffic signal for vehicles travelling northbound on South Main Street was red (causing him to stop), the signal for traffic on Benning Street was also red when the Traudts were "about 3 car lengths back from the stop line."

18.     Roberts activated his vehicle's overhead police lights and stopped the Traudt vehicle for an alleged "red light violation" pursuant to New Hampshire law (N.H. Rev. Stat. §265:9).

19.     Roberts' stop of the Traudt vehicle was pretextural and was eventually determined to have been without probable cause, and thus illegal following hearing and by order of the Lebanon District Court (Cirone, J.) (*State v. Victoria Traudt*, docket number 452207cr312, decided June 20, 2007).

4

20.     Upon information and belief, Roberts and/or Smolenski have participated in several other pretextural stops of motorists at the same intersection described above before and after the incident involving the Traudts.

## UNJUSTIFIED ASSAULT AND BATTERY ON SCOTT

21.     Roberts asked Victoria for her license and registration.  At first, she could only locate and provide him her valid driver's license.  Roberts returned to his vehicle with the driver's license.

22.     Victoria eventually located her registration, whereupon she walked back to Roberts' police cruiser, tapped on the driver's window and gave him the registration after he lowered the window glass.

23.     While Victoria stood in the roadway, Roberts asked whether she was been "drinking" that evening and she replied that she had indeed been drinking earlier in the evening.

24.     Roberts did not ask Victoria to get back in her vehicle; rather, he asked Victoria whether she would submit to a so-called "field sobriety test" and she readily agreed.

25.     Victoria walked behind her vehicle (ahead of Roberts' police car) and awaited the testing.

26.     Upon information and believe, Roberts summoned Smolenski to provide assistance with the vehicle stop and "field sobriety test".

27.     Roberts administered the first test during which time Victoria had her back toward the Traudt vehicle.

28.     Roberts then requested that Victoria do a "walk and turn" test on the slippery road surface, to which she agreed, but asked if she could take her high-heeled boots off.

5

29.     Roberts did not object, so Victoria bent down to take her boots off in preparation for the second "field sobriety test".

30.     Scott looked back from time to time to see what was happening with his wife. Although somewhat upset at being stopped for legally passing through an intersection, he remained seated in the vehicle.

31.     When Victoria bent down to remove her boots, Scott became concerned, opened the door of his car, got out, stood up and asked the police if his wife was okay.

32.     Officer Smolenski immediately yelled at Scott, telling Scott to get back in the car. Both Roberts and Smolenski later reported and testified that Scott appeared "intoxicated".

33.     Scott again asked if his wife was okay and remained standing beside the car, one arm on the top of the door, his other on the roof of the car.

34.     Smolenski again yelled at Scott, again telling him to get back into the Traudt vehicle, but Scott stated that Victoria had Constitutional rights and did not have do field sobriety tests.

35.     Upon information and belief, Roberts then used his shoulder radio to call for "backup" and another Lebanon police officer headed to the scene.

36.     Upon information and belief, Roberts yelled, "Go!" and both he and Smolenski rushed toward Scott.

37.     The officers grabbed Scott, causing him to stumble, then forced him around to the front of the Traudt vehicle.

38.     While being flung to the ground and while on the ground, Scott was punched repeatedly by both of the officers. He was forced to the ground, face down and they pulled his arms back.

6

39.     Roberts and Smolenski dragged Scott around the front of the car, still face down with his arms behind his back.

40.     Roberts and Smolenski choked, repeatedly punched, assaulted, battered, pepper sprayed, and used a baton to strike Scott repeatedly.

41.     With the arrival of a third police officer, Scott was handcuffed and taken to the Lebanon Police Department where he was placed in a secure cell and even when so completely confined was left in handcuffs for an extended period of time.

42.     As a direct and proximate result of the unwarranted and unreasonable assault, battery, and excessive and unnecessary force used by Roberts and Smolenski, Scott suffered severe and disabling injuries to his person, some of which have lasted for such a length of time to suggest that they are or will be of a permanent nature.

43.     As a further direct and proximate result of the actions of Roberts and Smolenski as described above, Scott suffered greatly in body and mind, suffered a loss of earnings or earning capacity, and has been otherwise greatly damaged.

44.     Paragraphs one (1) through four (4), above (identifying the parties to this action) are restated and incorporated, by reference, in each count that follows.

45.     Paragraphs twelve (12) through forty-three (43), above (setting forth factual allegations) are also restated and incorporated, by reference, in each count below.


### COUNT I
**(Violation of First Amendment 42 U.S.C. §1983, *et seq.*)**

46.     Under proper circumstances (e.g. police investigation and exercise of police powers), the Lebanon Police Department has a legitimate interest in protecting the integrity and efficiency of its police work.

47.     Defendant Roberts did not instruct Victoria to return and get back inside her vehicle when she presented her registration to him at the window of his police cruiser.

48.     Scott's standing outside his vehicle in the manner described above did not present any clear, apparent or present danger to himself or any other person at the scene of the purported investigation.

49.     Scott did not attempt to physically interfere with the "field sobriety" testing of his wife, but the officers understood that Scott was vocally pointing out that they had no right to question Victoria and that Victoria could refuse the perform the "field sobriety tests" they wanted to perform.

50.     Roberts and Smolenski became visibly angered at Scott after Scott reminded them of the law, and promptly charged and assaulted Scott as described above.

51.     It is objectively reasonable to conclude that the actions of Roberts and Smolenski in charging and assaulting Scott were motivated (in whole or in part) by Scott's admonishment that they had no right to conduct such "field sobriety tests".

52.     In point of fact, a person in Victoria's position is not required by law to submit to so-called "field sobriety tests", thus Scott's words were accurate and truthful.

53.     Under the circumstances of the pretextural investigation and words that Roberts and Smolenski found offensive to them, their actions were intended to and did (in whole or in part) constitute retaliation against Scott for the exercise of his right of free speech as allowed him and protected under the First Amendment of the Constitution of the United States of America and 42 U.S.C. §1983, *et seq*.

54.     The actions of Roberts and Smolenski were made under color of law and violated Scott's First Amendment right of free speech and of association with his wife, Victoria.

55.     The City of Lebanon is responsible for the actions of Roberts and Smolenski under the doctrine of *respondeat superior*.

56.     As a result of the actions of the defendants, as described in this Count, Scott is entitled to compensatory, exemplary, punitive and/or presumed damages for violation of his First Amendment Constitutional Rights as against Roberts and Smolenski.

57.     As a further result of the actions of the defendants, Scott is entitled to compensatory and presumed damages for violation of his First Amendment Constitutional Rights from the City of Lebanon.

**WHEREFORE,** Scott demands judgment against Defendants for those damages described in the preceding two paragraphs, plus interest, costs, and (if applicable) attorney fees.

**COUNT II**
**(Violation of Fourth Amendment – 42 U.S.C. §1983, *et seq.*)**

58.     The right of persons to be free of unjustified seizure or arrest (whether actual or *de facto*) and the right of persons to not be subjected to the use of excessive and unreasonable force in the course of and/or following an actual or *de facto* arrest were (as of January 14, 2007) in existence and clearly established.

59.     Roberts and Smolenski had accordingly been given actual, constructive, fair and clear warning that violation of such rights were and are unlawful.

60.     When Roberts and Smolenski charged, grabbed, beat, threw down, subdued, used pepper spray (in great volume at point blank range) and continued striking Scott with fists and a "baton", Roberts and Smolenski could not have reasonably concluded that Scott was committing or about to commit any crime.

9

61.    The absence of any actual or imminent criminal act was clearly and objectively demonstrated by the fact that Scott made no aggressive moves toward either Roberts or Smolenski, remained beside his vehicle and was (at worst), directing non-combative words to Roberts and Smolenski that nevertheless enraged them.

62.    Scott's continued pummeling by Roberts and Smolenski after he was thrown to the ground and subdued demonstrates the use of a level of force that cannot be justified under the facts nor as the product of mistake or proper reasoning.

63.    Roberts and Smolenski knew or reasonably should have known and understood that they were violating Scott's Fourth Amendment Constitutional Rights by and through their actions as described in this Count.

64.    The actions of Roberts and Smolenski were made under the color of State Law and thus violated the Fourth Amendment and 42 U.S.C §1983, *et seq.*

65.    The City of Lebanon is also responsible for the actions of the officers to the extent that they acted in the scope of their employment and under the doctrine of *respondeat superior*.

66.    As a result of the actions of the defendants, as described in this Count, Scott is entitled under 42 U.S.C §1983, *et seq.* to compensatory, exemplary, punitive and/or presumed damages for violation of his Fourth Amendment Constitutional Rights as against Roberts and Smolenski.

67.    As a further result of the actions of the defendants, Scott is entitled under 42 U.S.C §1983, *et seq.* to compensatory and presumed damages for violation of his Fourth Amendment Constitutional Rights from the City of Lebanon.

**WHEREFORE**, Scott demands judgment against Defendants for those damages described in the preceding two paragraphs, plus interest, costs, and (if applicable) attorney fees.

10

## COUNT III
### (Common Law Assault - Roberts and Smolenski)

68.     The actions of Roberts and Smolenski as described in Paragraphs 31-43, above, constituted the common law tort of assault (and/or battery) (hereinafter, "assault") upon Scott's person.

69.     The actions of Roberts and Smolenski were not privileged.

70.     As a result of the assault by Roberts and Smolenski, Scott is entitled to compensatory, exemplary and/or punitive damages as a result of the assault on his person.

**WHEREFORE**, Scott demands judgment against Roberts and Smolenski for those damages described in the preceding paragraph (plus interest and costs).

## COUNT IV
### (*Respondeat Superior* for Officers' Actions – City of Lebanon)

71.     Paragraph sixty-eight (68) of this Complaint is also restated and is incorporated herein, by reference.

72.     Upon information and belief, the actions of Roberts and Smolenski were motivated and/or actuated (at least in part) by an object to serve their employer, the City of Lebanon.

73.     The actions of Roberts and Smolenski in utilizing excessive force in their assault upon Scott were intentional and/or negligent.

74.     The City of Lebanon conducted a so-called "internal" investigation of Scott's allegations against Roberts and Smolenski but found that Scott's allegations were lacking in merit.

75.     The City of Lebanon thus had actual knowledge and/or reasonable opportunity to obtain knowledge of Scott's injury or damage for many, many months (if not years).

76.     As a result of the aforementioned employer-employee relationship between Roberts and Smolenski on the one hand and the City of Lebanon on the other hand, the City of Lebanon is responsible for the consequences of all actions taken by Roberts and Smolenski toward Scott under the doctrine of *respondeat superior*.

77.     Accordingly, Scott is entitled to compensatory damages for the vicious and excessive force used upon him and for all injuries causes by the same as described in the factual paragraphs of this Complaint and in Count III.

**WHEREFORE**, Scott demands judgment against the City of Lebanon for all damages and injuries to his person, plus interest, costs and (if applicable) attorney fees.

## DEMAND FOR JURY TRIAL

Plaintiff hereby claims and demands a trial by jury on all counts and portions of this complaint that are so triable.

Dated: January 12, 2010

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072
Tel.: (802) 889-3398