UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Scott Traudt

        v.                                    Civil No. 10-cv-12-JL

Phillip Roberts *et al.*

**SUMMARY ORDER**

Plaintiff Scott Traudt, proceeding pro se, has sued Phillip
Roberts and Richard Smolenski, two officers of the Lebanon Police
Department, as well as the Department's chief and the City of
Lebanon.  Traudt seeks damages for alleged violations of his
federal constitutional rights under 42 U.S.C. §§ 1983 and 1985,
and the Racketeer Influenced and Corrupt Organizations Act, 18
U.S.C. § 1961 et seq. ("RICO"), as well as at common law.  These
claims arise out of Traudt's arrest and prosecution on charges
arising out of his alleged behavior after one of the officers
stopped a vehicle, being driven by Traudt's then-wife, in which
he was the sole passenger.  At the end of a trial in Grafton
County Superior Court, a jury convicted Traudt of one count of
simple assault, see N.H. Rev. Stat. Ann. § 631:2-a, I(a), and one
count of disorderly conduct, see id. § 644:2, II(d), for his
actions during the traffic stop (though Traudt was acquitted on a
second count of assault).

After Traudt commenced this action, this court entered a stay so that Traudt could pursue a motion for a new trial on those charges in the Superior Court (one of seven motions he has filed there collaterally attacking his convictions).  After Traudt advised this court that the New Hampshire Supreme Court had rejected his appeal from the denial of that motion, this court lifted the stay and directed the parties to file a joint discovery plan.  See Order of June 28, 2012.  They did so, proposing, in relevant part, a summary judgment deadline of April 1, 2013, and a discovery cutoff of June 1, 2013.  This plan was then approved, in relevant part, by the court.  Order of July 26, 2012 (McCafferty, M.J., presiding due to Traudt's pro se status).

On February 27, 2013, after much of the ensuing discovery period had passed, the defendants filed a motion for summary judgment on all of Traudt's claims.  See Fed. R. Civ. P. 56. With the defendants' assent, Traudt sought and received a brief extension of his time to object to the motion.  On the day after the extended deadline, Traudt filed his objection and a number of supporting materials.  In the week that followed, Traudt filed a number of motions seeking various forms of discovery relief.  He has since filed a motion for leave to file an amended complaint (on April 26, 2012), a motion to stay (on May 16, 2013), a "motion for oral argument and notice of matters outside the

pleadings" (on June 20, 2013), and another discovery motion (also on June 20, 2013).  The defendants, for their part, have objected to all of these motions, and filed their owns motions (1) to exclude Traudt's proffered expert witnesses and (2) seeking, in substance, a protective order against certain discovery Traudt has sought here, see Fed. R. Civ. P. 26(c)(1).  This court's rulings on those motions follow.

### Traudt's discovery motions

As just noted, after filing his objection to the defendants' motion for summary judgment, Traudt filed several motions seeking some form of discovery relief in this action.  The pendency of motions for discovery relief on behalf of the non-moving party does not automatically prevent the court from granting a motion for summary judgment.  See Jones v. Secord, 684 F.3d 1, 5-6 (1st Cir. 2012).  Rather, as Jones explains, the Federal Rules of Civil Procedure provide a mechanism for a party faced with a summary judgment motion who "cannot present facts essential to justify its opposition," authorizing the court, as relief from this predicament, to "defer considering the motion or deny it" or "allow time . . . to take discovery."  Fed. R. Civ. P. 56(d).

3

The rule, however, requires the party to make this showing "by affidavit or declaration," and by "specified reasons."  Id. As the Court of Appeals has cautioned,

> A party who wishes to invoke Rule 56(d) must act diligently and proffer to the trial court an affidavit or other authoritative submission that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

Jones, 684 F.3d at 6.  Traudt has submitted no such "affidavit or other authoritative submission" attempting to show his entitlement to relief under Rule 56(d).  As noted below, however, Traudt's summary judgment objection does refer, albeit briefly, to certain outstanding discovery requests, and all of his various motions for discovery relief were filed after the defendants moved for summary judgment.  In light of Traudt's pro se status, this court has construed the filings, as an attempt to invoke Rule 56(d).  But that attempt falls short, for the reasons discussed in detail below.

Traudt's summary judgment objection and pending discovery motions refer to three subjects as to which, he suggests, he has yet to receive full discovery:

**Mobile data transmissions**.  Traudt states that the defendants "[c]ontinue to withhold information that would have

4

been vital to [his] defense in the form of Mobile Data Transmissions recorded by the [Lebanon Police Department] the morning of [his] arrest." Even if this is true, however, it would not entitle Traudt to relief under Rule 56(d), for at least two independent reasons.

First, although records of the Lebanon Police Department's "Mobile Data Transmissions" from the morning of Traudt's arrest could, at least conceivably, contain information that is relevant to his claims in this action, Traudt does not articulate any basis to believe that the information would demonstrate a genuine issue of material fact so as to defeat summary judgment. "Speculative assertions that the defendant has unspecified facts in its possession necessary for the plaintiff to develop its legal theories . . . are entirely inadequate" to obtain relief under Rule 56(d). C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 45 (1st Cir. 1998) (quotation marks omitted).

Second, Traudt has failed to "act diligently" in attempting to obtain this information, as is also necessary to obtain relief under Rule 56(d). Jones, 684 F.3d at 6. In fact, while Traudt claims that, in response to his request for this information in discovery, the defendants submitted transmissions that were "encoded, encrypted, and, based on expert analysis, were of profound inconsistency," Traudt did not seek any relief for this

5

allegedly inadequate production until he filed a motion to compel
on June 20, 2013.  This was nearly three weeks after discovery in
this case closed and, moreover, nearly three months after the
defendants filed their motion for summary judgment.  Whatever the
potential relevance of the mobile data transmissions, then, they
afford no basis for Rule 56(d) relief, since Traudt failed to
seek them "diligently"--vis-a-vis both the defendants' summary
judgment motion and the discovery cutoff.  See, e.g., Vargas-Ruiz
v. Golden Arch Development, Inc., 368 F.3d 1, 5 (1st Cir. 2004).

**Original audio recordings.**  In mid-April 2013, about six
weeks after the defendants filed their motion for summary
judgment, Traudt filed a "motion to compel the production of
documents and to permit digital access for inspection and
recording of digital files."  This motion requests both Traudt
and his proffered "expert" on audiovisual reconstruction
"personally to have access to the storage device that retains []
audiovisual recordings" of "all sections of the headquarters of
the Lebanon Police Department" between midnight and noon on the
day of Traudt's arrests, including of "conversations between []
Roberts and [] Smolenski in the [police department] garage."

When Traudt requested this "access" in discovery, the
defendants refused to provide it "on the grounds that such access
is privileged and confidential and not reasonably calculated to

6

lead to the discovery of admissible evidence," but provided "a
complete CD copy of the visual and audio recordings from the
Lebanon Police Department relevant to" Traudt during the day of
his arrest.  Importantly, Traudt does not dispute that he
received this very CD in discovery.  Instead, he asserts that the
CD contains "a compressed 'WAV' format file that essentially
squeezes the audio and compacts it in such a way that there is a
definable 'hum,'" whereas access to the original recording "will
allow for processing and background noise to be filtered . . .
and presently inaudible sections to be brought into clarity."
This state of affairs also does not entitle Traudt to relief
under Rule 56(d), for three independent reasons.

First, as he did with regard to the mobile data
tranmissions, Traudt has failed to "act diligently" in pursuing
this discovery.  Jones, 684 F.3d at 6.  The defendants served
Traudt with their objection refusing to grant him access to the
original recordings on September 24, 2012, but Traudt did not
move to compel or seek any other relief from the court until more
than six months later, on April 12, 2013--which was itself nearly
six weeks after the defendants filed their motion for summary
judgment, on February 27, 2013.  Traudt makes no effort to
explain this delay, which itself disentitles him to relief under
Rule 56(d).  See, e.g., Vargas-Ruiz, 368 F.3d at 5.

7

Second, Traudt provides no support for his assertion that access to the original recording "will allow for processing and background noise to be filtered . . . and presently inaudible sections to be brought into clarity."  Traudt offers an excerpt from an email from his proffered audiovisual reconstruction expert stating that "numerous advancements have been made in" such technology since 2008 (when Traudt was first provided a copy of the recording as discovery in the criminal trial against him), including new releases of "enhancement and noise reduction software" in 2011 and 2012.  Crucially, however, the expert does not state that, to take advantage of these advancements, he needs access to the original version of the recording (as opposed to the copy of the recording on the CD, which, again, Traudt received in discovery here in September 2012, seemingly in plenty of time to apply the new versions of the software).  Traudt's unsupported assertion to that effect in his motion to compel is not the sort of "authoritative submission" that would entitle him to Rule 56(d) relief based on the defendants' refusal to provide such access.  Jones, 684 F.3d at 6.

Third, based on the materials presently before the court, it is a matter of pure conjecture that these "inaudible sections" contain statements by the officers from which a rational jury could find that they were entering into a conspiracy to present

8

false evidence against Traudt.  So Traudt has failed to show that access to the original recordings of the booking area on the morning of his arrest would "influence the outcome of the pending summary judgment motion" so as to entitle him to relief under Rule 56(d).  Jones, 684 F.3d at 6.

**Disciplinary records.**  In his objection to the summary judgment motion, Traudt asserts not only that Smolenski "was instructed not to answer questions at his deposition regarding any disciplinary actions taken against him" or "whether or not he'd ever been sued for conduct as a police officer," but also that the defendants have "acknowledged destroying disciplinary . . . findings or complaints against one or more of the defendants."  But Traudt provides no support for his charge that the defendants have "acknowledged destroying disciplinary . . . findings or complaints against one or more of the defendants," and, in fact, the record is to the contrary.

Traudt bases his charge on a provision of the collective bargaining agreement ("CBA") between the City of Lebanon and the union representing its police officers.  This provision requires the "expungement" of materials from an officer's personnel file after either 24 or 48 months, depending on whether the materials reflect "disciplinary" or "non-disciplinary" matters.  The defendants explain, however, that "expunged materials are not

9

'destroyed'" pursuant to this provision, as Traudt suggests, but rather merely "taken out of the officer's personnel file . . . That does not mean that another copy of the expunged material is not retained and kept in other confidential files."

Traudt has not come forward with anything to dispute this explanation.[1]  Indeed, Traudt acknowledges that, in a September 2010 response to his discovery request for the production of "disciplinary action documents" and the identification of "oral sanctions" concerning any of the defendants, the defendants stated "none.  One matter not related in any way to this incident was expunged . . . per Union Contract."  In December 2010, moreover, both Roberts and Smolenski provided sworn interrogatory answers to the same effect.

---

[1]Accordingly, the court denies Traudt's motion for a preliminary injunction preventing the City from adhering to the "expungement" provision of the CBA.  While a court can order a party to preserve relevant evidence based on a demonstrated risk of its destruction, see, e.g., Capricorn Power Co. v. Siemens Westinghouse Power Co., 220 F.R.D. 429 (W.D. Pa. 2004), Traudt has shown neither that the City possesses any disciplinary records that are relevant here, nor that the "expungement" provision threatens their destruction.  That undisputed fact would seem to refute Traudt's charge that "this portion of the contract is wildly illegal" and "calculated to frustrate the Constitutional/fair trial goals" articulated in Brady v. Maryland, 373 U.S. 83 (1963), and its state-law counterpart, New Hampshire v. Laurie, 139 N.H. 325 (1995), but, in any event, this action is obviously not the appropriate vehicle for the issuance of an injunction against speculative violations of non-parties' rights, particularly rights under state law.

Traudt articulates no basis for believing that, contrary to these statements, any of the defendants were in fact subject to disciplinary action beyond the one matter referenced in the response, or that this--or any such--matter is, in fact, relevant to Traudt's claims here.[2]  (In any event, as they promised to do in their interrogatory answers, the defendants have since submitted the records of that one disciplinary matter to the court for in camera inspection and, as explained infra, they are correct that it is irrelevant.)

The record shows, then, that the defendants are not in possession of any disciplinary records that are even relevant here--let alone that would enable Traudt to show a genuine issue of material fact in response to their motion for summary judgment.  Nor is there any support for Traudt's charge that the defendants were in possession of such records, but that they were "destroyed" pursuant to the CBA (indeed, the fact that the defendants have submitted, for in camera review, records of a disciplinary proceeding that were "expunged" from an officer's personnel file belies Traudt's claim that "expungement" equals

_____

[2]Traudt's affidavit in objection to the summary judgment motion relays a second-hand account of an alleged disciplinary action against Smolenski.  But that alleged disciplinary action, even on Traudt's version of it, was completely unrelated to Smolenski's arrest and prosecution of Traudt, or, for that matter, the arrest or prosecution of anyone.

"destruction").  So Traudt has failed to show that any allegedly outstanding discovery as to the defendants' disciplinary records would "influence the outcome of the pending summary judgment motion" so as to entitle him to obtain that discovery despite the pendency of the motion.[3]  Jones, 684 F.3d at 6.

### Defendants' discovery motions

The defendants, for their part, have also filed two motions for relief relative to the discovery process.  First, they have filed a motion to exclude Traudt's proffered expert witnesses from presenting any testimony in this matter because he failed to provide expert disclosures until almost four months after the deadline set forth in the scheduling order, and because even the untimely disclosure failed to contain much of the information required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.  While the defendants appear correct on both counts,

---

[3]This includes Traudt's "motion for an order issuing a subpoena duces tecum compelling the production of evidence by the Attorney General of the State of New Hampshire."  This motion essentially seeks to launch a statewide investigation into law enforcement personnel records to determine whether they contain exculpatory evidence that should be (or should have been) disclosed to defendants facing criminal prosecutions.  There is no reason to believe that this unusual request would turn up evidence that would bear in any way on the defendants' motion for summary judgment (indeed, Traudt's summary judgment objection does not even refer to the motion for the subpoena).

the court simply denies this motion as moot in light of the entry
of summary judgment for them on all claims.

Second, as noted supra, the defendants have filed a motion
seeking this court to rule, after in camera review of the records
of the single disciplinary action that the Lebanon Police
Department has in its possession as to any of the defendants in
this action, that those records are "not Laurie material, and
[are] not relevant, admissible, or discoverable in this civil
matter."  The court treats this as motion for a protective order.
See Fed. R. Civ. P. 26(c)(1).

The defendants had previously sought this relief through a
sealed, ex parte motion, but this court denied their request to
proceed in that fashion, because it in effect asked for a ruling
"that the plaintiff cannot obtain certain materials in discovery
in this action without the plaintiff's ever getting notice that
the defendants had sought, or obtained, such a ruling."  Order of
May 10, 2013.  So the court struck the ex parte version of the
defendants' motion, ordering them to "file a motion for in camera
review, which will not be sealed" and to "submit for in camera
review . . . the documents they seek to protect from discovery in
this action."  Id.

When the defendants re-filed their motion for in camera
review, they filed unredacted versions of affidavits that

13

described the contents of the documents submitted for in camera review.  Less than an hour later, the defendants filed a motion to strike those affidavits, explaining that they had been filed in unredacted form as the result of a computer glitch, and to replace them with redacted versions (while submitting the unredacted versions for in camera review).  While Traudt filed an objection to this relief, it consists entirely of irrelevant assertions about his discovery responses and the nature of his injuries from the defendants' alleged use of excessive force in arresting him.  The defendants' motion to strike the unredacted versions of the affidavits they mistakenly filed is granted.

Traudt has also filed an objection to the motion for in camera review itself.  This objection, however, consists largely of ad hominem attacks on the defendants' counsel in this action. In any event, federal courts commonly review materials in camera in deciding whether to issue protective orders under Rule 26(c). See, e.g., Healey v. I-Flow, LLC, 282 F.R.D. 211, 215 (D. Minn. 2012); Sprint Commc'ns Co., L.P. v. Native Am. Telecom, LLC, No. 10-4110, 2011 WL 1518580, at *5 (D.S.D. Apr. 19, 2011); Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 412-13 (M.D.N.C. 1991) (citing additional cases).  Accordingly, the defendants' motion for in camera review is granted.

14

Following that in camera review, the court rules that
information about the disciplinary action in question, including
the relevant portion of the officer's personnel file, is
irrelevant to this action, see Fed. R. Civ. P. 26(b)(1), and
that, under Rule 26(c), good cause therefore exists to protect
the defendants against producing that information in discovery.
See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1034 (9th Cir.
1990) (upholding entry of protective order against discovery into
police personnel files containing information irrelevant to
plaintiff's claims).  The officer was disciplined for conduct
that did not involve Traudt, or any investigation, arrest, or
prosecution of anyone.  Nor is the conduct probative of the
officer's truthfulness as a witness under Rule 608(b) of the
Federal Rules of Evidence.

The court need not and does not reach the question, however,
of whether evidence of the conduct amounts to "Laurie material"
under New Hampshire law.  Laurie is based on a specific provision
of the New Hampshire Constitution which, the New Hampshire
Supreme Court has recognized, gives criminal defendants greater
protection against the prosecution's failure to disclose
exculpatory evidence than the federal Constitution does.  139
N.H. at 329-30.  So Traudt cannot pursue any claim in this action
based on the prosecution's failure, if any, to comply with its

15

duties of disclosure under Laurie because (1) § 1983 does not create a cause of action for violations of state law, see, e.g., Roy v. City of Augusta, 712 F.2d 1517, 1522 (1st Cir. 1983), (2) any such claim would be barred by Heck v. Humphrey, 512 U.S. 477 (1994), and (3) the New Hampshire Supreme Court has generally declined to recognize private rights of action for violations of state constitutional rights, see Marquay v. Eno, 139 N.H. 708, 721 (1995).  Whether evidence of the officer's conduct is "Laurie material" is simply not--and cannot be--at issue in this action.

### Amendment

About two month after the defendants filed their motion for summary judgment, Traudt filed a motion for leave to amend his complaint.  The motion asserts that the CBA between the City of Lebanon and the union representing its police officers, discussed in relevant part above, "violates New Hampshire law with regards to maintaining [Laurie-]related materials," and alleges various other improprieties by the Lebanon Police Department.  In violation of L.R. 15.1(a), however, the motion fails to attach a copy of any proposed amended complaint, and is therefore denied.

In addition, the motion for leave to amend fails to articulate any intelligible claim that is not already contained in the existing version of the amended complaint, aside from,

potentially, a claim that Traudt's convictions resulted from a violation of Laurie.  As just discussed, though, such a claim is not cognizable in this action.[4]  So the motion is also denied because the proposed amendment, as far as the court can discern it, would be futile.  See, e.g., Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

### Stay

Finally, Traudt has filed a motion seeking to stay this action for 60 days so that counsel can appear on his behalf or, in the alternative, to stay this action until this court rules upon his petition for habeas relief under § 2254.  While the motion, filed on May 17, 2013, says that "[a]t this juncture, plaintiff can conclude he has counsel to enter both the habeas proceedings [and] this civil suit," no attorney has appeared for Traudt in either case in the intervening seven weeks.

---

[4]For the same reasons, Traudt's "motion for oral argument and notice of matters outside the pleadings" is also denied, insofar as it asks, either directly or indirectly, for leave to amend the complaint to assert a claim that Traudt's conviction was procured in violation of Laurie.  (Insofar as this motion, which was filed on June 20, 2013, asks for the court to order the defendants to produce Smolenski's "complete disciplinary record," that request is denied as untimely, coming nearly three months after the defendants moved for summary judgment and three weeks after the discovery cutoff.)  Given Traudt's clear disentitlement to this relief, his request for oral argument on the motion is also denied, since it would not assist the court.  See L.R. 7.1(d); Alleman v. Montplaisir, 2013 DNH 62, 7 n.2.

Furthermore, as discussed at the outset, Traudt has already enjoyed the benefit of a lengthy stay--from September 2010 to June 2012--during which he could have attempted to secure counsel to represent him in this proceeding.  He offers no account of his attempts to do so during that time, nor, for that matter, in the additional 11 months between when the court lifted this stay in June 2012 and when he filed his current motion to stay in May 2013.  The court declines to delay the resolution of this matter further so that Traudt may engage long-overdue efforts to obtain counsel.  It is also worth noting that, for counsel's involvement to have any meaningful effect, Traudt would also have to obtain leave to file a counseled (and very late) response to the defendants' motion for summary judgment.  Even were counsel to appear for Traudt, and seek such leave, this court would be disinclined to grant it, since (1) Traudt elected to respond to the summary judgment motion by filing his own pro se objection (followed by a raft of discovery motions) rather than seeking a stay at that point so he could find counsel to do so, (2) the objection was due nearly three months ago at this point, and (3) trial is scheduled to commence in less than six weeks.

The pendency of Traudt's § 2254 petition--which is, by his own account, his eighth attempt at collaterally attacking his convictions--provides no basis to stay the action either.  Again,

18

this action was already stayed for 20 months so that Traudt could pursue one of those collateral attacks, so another stay for essentially the same purpose would be unfair to the defendants. This court, of course, expresses no view as to the merits of Traudt's § 2254 petition.  Traudt's motion to stay is denied.

## III. **Conclusion**

For the foregoing reasons, Traudt's motions for a preliminary injunction,[5] to compel,[6] for a subpoena,[7] for leave to amend his complaint,[8] to stay this action,[9] and for oral argument and notice of matters outside the pleadings[10] DENIED.  The defendants' motion to preclude Traudt's proffered expert witnesses[11] is DENIED as moot.  The defendants' motions for the issuance of a protective order following in camera review,[12] to

---

[5] Document no. 25.

[6] Document nos. 26, 51.

[7] Document no. 27.

[8] Document no. 29.

[9] Document no. 44.

[10] Document no. 50.

[11] Document no. 30.

[12] Document no. 42.

strike unredacted versions of the affidavits they mistakenly

filed with that motion,[13] are GRANTED.

> **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 12, 2013

cc:  Scott Traudt, pro se
     Charles P. Bauer, Esq.

---

[13]Document no. 43.